COMMONWEALTH *vs.* CHARLES LANG.

Norfolk.   October 10, 1985, July 9, 1986. — June 3, 1987.

Present: GRANT, SMITH, & FINE, JJ.

*Homicide. Practice, Criminal,* Grand jury proceedings, Conduct of prosecutor, New trial. *Grand Jury. Witness,* Privilege, Refusal to testify.

At the trial of a murder case, no error appeared in the judge's denial of the defendant's motion to dismiss based on alleged prosecutorial misconduct in deliberately omitting facts from the presentation of evidence to the grand jury, where the judge was warranted in finding that neither the prosecutor nor the witness intended to deceive the grand jury, and where the defendant, in any event, showed no prejudice. [254-257]

No error appeared, at the trial of a murder case, in the judge's denial of the defendant's motion to dismiss the indictment based on alleged prosecutorial misconduct in calling a certain witness before the grand jury, who the prosecutor knew would invoke her Fifth Amendment privilege against self-incrimination, where the judge was warranted in finding that the prosecutor had no knowledge that the witness would claim her privilege, and where the defendant did not show he was prejudiced. [257-258]

At the trial of an indictment for murder in the second degree, error, if any, in the denial of the defendant's motion for a required finding of not guilty, based on the ground that the element of malice had not been proved, was harmless, where the jury returned a verdict of involuntary manslaughter. [258-259]

At a hearing on a criminal defendant's motion for a new trial based on a claim that the prosecution had withheld exculpatory information from him at trial, the judge correctly ruled that the defendant failed to establish that the undisclosed material raised a reasonable doubt as to his guilt which did not otherwise exist. [259-260]

INDICTMENT found and returned in the Superior Court Department on June 14, 1982.

The case was tried before *Herbert Abrams,* J., and a motion for a new trial was heard by him.

*Martin K. Leppo* for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

Commonwealth *v.* Lang.

SMITH, J. The defendant was indicted by a Norfolk County grand jury on a charge of murder in the second degree. The victim was a sixteen-month-old baby boy.

At trial, doctors testified that the baby had died of an acute bilateral subdural hematoma as a result of blunt force trauma to the head. It was the Commonwealth's theory that, while alone with the victim, the defendant became angry and struck the baby on the head, causing his death. The defendant contended, however, that the baby had received his fatal injury as a result of an unfortunate accident. According to the defendant, while he was playing with the baby he tossed him in the air, failed to catch him, and the baby hit the floor on his "rump," then on his back, and then on the back of his head. The jury were instructed on the law pertaining to murder in the second degree and involuntary manslaughter. They returned a verdict of guilty of involuntary manslaughter.

Prior to trial the defendant filed two motions to dismiss the indictment, both based on a claim of prosecutorial misconduct during the presentation of evidence to the grand jury. After hearing, both motions were denied. At trial, the defendant filed a motion for a required finding of not guilty of murder in the second degree and involuntary manslaughter. That motion was denied. Finally, over a year after he had been found guilty, the defendant filed a motion for a new trial. He contended that the Commonwealth had withheld exculpatory information. After several hearings, that motion was denied.

The defendant argues on appeal that the judge erred in denying him motions to dismiss the indictment, for a required finding of not guilty, and for a new trial. We find no error.

1. *Denial of motion to dismiss. Claim of deliberate omission of fact in presentation of evidence to the grand jury.* Several witnesses testified before the grand jury in regard to the baby's death. The doctor who performed the autopsy testified that the victim had died from an acute subdural hematoma caused, in his opinion, by blunt force trauma to the head. Officer Tanger of the Weymouth police department testified as to his knowledge of the incident. He told the grand jurors that the defendant had given him a statement of the circumstances of the baby's

death. Officer Tanger stated that the defendant told him that he was throwing the baby up in the air in a playful manner when the baby fell and landed on the floor without the defendant's being able to break the fall. The police officer testified that the defendant told him that the baby "kind of hit on his rump, being the rectum side, and then hit his back and then hit the back of his head."

The doctor who had previously testified as to the cause of death was recalled by the prosecutor. He was asked by the prosecutor whether he had received a report of how the baby's injury occurred. He stated that he had received a police report from the Weymouth police department. When asked about the contents of the report, the doctor testified that "the report stated that the child was tossed into the air and then it slipped [through] the hands of [the defendant] and hit the floor of the bedroom. It says that [the victim] hit with the rump first and then his back." The doctor, in response to a question from the prosecutor, then gave as his opinion that the injuries suffered by the victim were not consistent with that description of the fall because of the severity of the head injury.

The police report referred to by the doctor inadvertently omitted any reference to that portion of the defendant's statement to Officer Tanger that described the baby as both falling *and* hitting his head. Subsequently, the defendant filed a motion to dismiss the indictment, alleging prosecutorial misconduct in regard to the manner in which the evidence was presented to the grand jury. He contended, among other things, that the doctor's opinion that the baby's injuries were inconsistent with the defendant's statement was based on the police report, which the prosecutor knew to be incorrect.

The judge conducted an evidentiary hearing on the defendant's motion. The doctor, who had testified twice before the grand jury, told the judge that if he had been asked by the prosecution in front of the grand jury whether the baby's injuries were consistent with a fall as described by the defendant, that is, with the baby's falling and striking his buttocks, back, and then head, he would have expressed the same opinion — "No."

The doctor testified that, for a fall to produce the type of injuries suffered by the victim, there would have to have been a direct injury to the head, that is, the baby's head would have to hit the floor first.

In addition to the doctor's testimony, two affidavits signed by the prosecutor were submitted. The prosecutor denied that he had intentionally recalled the doctor in order to deceive the grand jury. He also stated that at no time was he aware of "any inconsistency or incompleteness regarding questions asked to or answers given by [the doctor] . . . regarding the . . . indictment."

The judge denied the defendant's motion. He ruled that the defendant did not suffer any prejudice during the grand jury proceedings because the doctor testified at the motion hearing that his opinion about the cause of the injury to the victim was the same whether he assumed the defendant's version of the facts or the one contained in the police report. He also ruled that neither the prosecutor nor the doctor had intentionally sought to deceive the grand jury and, therefore, that there was no prosecutorial misconduct.

The defendant cites *Commonwealth* v. *O'Dell,* 392 Mass. 445, 448-449 (1984), as support for his claim that there was prosecutorial misconduct. In *O'Dell,* the court held that where the presentation of a defendant's inculpatory statements recorded in a police report were distorted by the intentional failure to disclose the defendant's exculpatory comments interspersed in that report, the grand jury proceedings were impaired and the indictment must be dismissed. However, *O'Dell* does not control this situation. Here, Officer Tanger gave the grand jury a complete recitation of the defendant's version of the incident. Thus, the grand jurors were aware that the defendant's statement to the police included a statement that the baby had fallen on its back *and* head. See *Commonwealth* v. *Connor,* 392 Mass. 838, 855 (1984).

The defendant has not advanced any valid reason to question the judge's finding that the prosecutor did not intentionally seek to deceive the grand jury. In addition, the defendant has failed to show that he suffered any prejudice from the prosecutor's referring to the version contained in the police report in

his question to the doctor. The doctor made clear, at the hearing on the motion, that his opinion that the baby's injuries could not have resulted from the fall described by the defendant would not have changed, even if he had been asked to assume the facts contained in the defendant's statement.

In the circumstances presented here, the judge's action in denying the motion did not constitute error.

2. *Denial of second motion to dismiss. Claim that the defendant was prejudiced because victim's mother was forced to invoke her Fifth Amendment privilege before the grand jury.* The last witness to testify before the grand jury was the mother of the victim. She was represented by counsel. She answered a few preliminary questions asked by the prosecutor. She then invoked her Fifth Amendment privilege against self-incrimination in answer to several questions.

The defendant filed a motion to dismiss the indictment, alleging prosecutorial misconduct, in that the prosecutor knew before he questioned her that the mother would claim her privilege not to testify. An affidavit of the mother's attorney was attached to the motion. In his affidavit, the attorney stated that, on the day the mother was to testify before the grand jury, he advised the prosecutor that he was uncertain whether she would testify. He further stated, however, that just as he and his client entered the grand jury room, he informed the prosecutor that, beyond giving her name and address, his client would assert her privilege not to testify.

An affidavit also was submitted by the prosecutor. He stated that at no time prior to the actual questioning did he have any certain knowledge that she would assert her privilege not to testify. He also stated that the witness answered approximately fifteen of the twenty-three questions asked of her.

The judge held a hearing on the motion. He found that, prior to the grand jury proceedings, the prosecutor had had no knowledge of whether the witness would claim her privilege against self-incrimination. He concluded that there was no prosecutorial misconduct.

The Supreme Judicial Court in *Commonwealth* v. *Kane,* 388 Mass. 128, 138-139 (1983), applied a two-pronged test "where the witness, after making known in advance his intention to

invoke a privilege not to testify, has nevertheless been permitted to state that position before the [trial] jury, and the defendant claims unfair prejudice as a result. The inquiry is (1) whether the prosecutor has so unfairly exploited the matter as to constitute prosecutorial misconduct, and (2) whether inferences from the witness's refusal to answer may have added critical weight to the prosecution's case." The defendant argues that the *Kane* test is applicable to the facts presented here.

The defendant's argument ignores the judge's finding that the prosecutor did not know in advance that the witness would assert her privilege. "[T]he prosecutor need not proceed on an assumption that the witness will ultimately balk when he is before the jury." *Commonwealth* v. *Kane,* 388 Mass. at 139. *Commonwealth* v. *Martin,* 372 Mass. 412, 420 (1977).

In addition, there has been no showing that the defendant suffered any prejudice by the assertion of the privilege by the mother. The grand jury had heard testimony by a doctor that rejected the defendant's theory of an accident, testimony from two witnesses that suggested that he regularly beat and abused the victim, and testimony from another doctor that indicated that the victim had been an abused child. It was undisputed that the defendant was the only person with the baby at the time he suffered the fatal injury. Therefore, as in *Kane,* there has been no showing that the mother's assertion of her privilege added "critical weight" to the case against the defendant before the grand jury.

3. *Denial of motion for required finding of not guilty.* At the close of the Commonwealth's case, the defendant filed a motion for a required finding of not guilty of the charge of second degree murder and "any lesser included crimes." The motion was denied. It was renewed at the close of all the evidence and again denied.

On appeal, the defendant argues that the judge erred in denying his motion for a required finding of not guilty of second degree murder because there was insufficient evidence of malice to permit that charge to be considered by the jury. However, the jury did not find the defendant guilty of murder in the second degree but rather involuntary manslaughter.

"Manslaughter imports the taking of human life by an act not justified in law, but *without malice aforethought* which is necessary to constitute murder" (emphasis supplied). *Commonwealth* v. *Campbell,* 352 Mass. 387, 396 (1967). The jury, by its verdict, found that the defendant did not act with malice, as the term is understood in the law of homicide. Therefore, even if the Commonwealth did not introduce sufficient evidence of malice as to the second degree murder charge, any error in denying the defendant's motion for a required finding of not guilty was "rendered harmless beyond a reasonable doubt by the jury's verdict [of the lesser included offense]." *Commonwealth* v. *Forde,* 392 Mass. 453, 456 (1984). Also see *Commonwealth* v. *Benoit,* 389 Mass. 411, 429 (1983).

The defendant has not briefed the issue in regard to the denials of his motion for a required finding of not guilty of "any lesser included offense," which we take to mean the charge of involuntary manslaughter. Therefore, we do not consider it. Mass.R.A.P. 16(a) (4), as amended, 367 Mass. 921 (1975).[1]

4. *Denial of motion for new trial.* On August 6, 1985, the defendant filed a motion for new trial. He alleged that there existed at the time of trial a file maintained by the Department of Social Services (Department) concerning the mother and her two children, including the victim. The file, according to the motion, contained information exculpatory in nature which, if it had been made available at trial, would have corroborated certain testimony given by the defendant and would have supplied background information as to the care of the victim by his mother and his father. In an affidavit that accompanied the motion, the defendant stated that he first became aware of the file after the trial but that the Commonwealth was aware of it prior to trial.

At the judge's request, the Department's file, consisting of two three-ring notebooks of approximately 1,000 pages, were made available to him. The judge then conducted an in camera

---

[1] In any event, we view the Commonwealth's evidence as sufficient to support a verdict of involuntary manslaughter.

examination of the file. The defendant then filed an additional affidavit which contained twenty-four items which he believed were in the file. The judge, after review of all the relevant material, denied the defendant's motion. He noted that the defendant had filed two previous motions for a new trial. The judge ruled that the defendant was aware of his present claims at the time he filed the previous motions. Because the defendant failed to raise the claim in his previous motions, the judge concluded that he had waived the issue.[2] See Mass.R.Crim.P. 30(c) (2), 378 Mass. 900 (1979). However, despite his finding that the defendant waived the issue, the judge considered the defendant's claim.

The judge ruled that the defendant failed to show that the undisclosed evidence was material. The defendant did not file a specific request for the evidence in question but made only a general request for exculpatory evidence. Any review of the defendant's claim, therefore, is made under the standard of materiality for a general request. That is, "[I]f the omitted evidence creates a reasonable doubt that did ·not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record." *Commonwealth* v. *Jackson,* 388 Mass. 98, 110 (1983), quoting from *United States* v. *Agurs,* 427 U.S. 97, 112 (1976). Under that test, we agree with the trial judge that the defendant did not establish that the undisclosed evidence was sufficient to raise a reasonable doubt that did not otherwise exist.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*

---

[2] The judge was correct in ruling that the defendant waived the issue. The record clearly establishes that before and during the trial the defendant was aware of investigations by the Department into claims of child abuse by the mother. The grand jury transcript, the trial transcript, and the documents produced before and during the trial clearly warrant the judge's finding that the defendant was aware of the Department's file.