COMMONWEALTH vs. KEITH D. D'ENTREMONT.

No. 93-P-338.

Middlesex. February 7, 1994. - May 16, 1994.

Present: SMITH, KAPLAN, & IRELAND, JJ.

*Constitutional Law*, Admissions and confessions, Assistance of counsel,
    Waiver of constitutional rights. *Waiver. Practice, Criminal*, Voluntari-
    ness of statement. *Evidence*, Admissions and confessions, Redirect ex-
    amination, Fresh complaint. *Words*, "Interrogation."

At a hearing on a motion to suppress a defendant's inculpatory statements
    made while in custody and after he had invoked his right to have coun-
    sel present during any interrogation, the judge correctly concluded that
    a police officer's introductory remarks did not constitute an interroga-
    tion [479-480]; that the defendant had initiated his conversation with
    the police [480-481]; and that the defendant had knowingly, intelli-
    gently and voluntarily waived his right to have counsel present before
    the interrogation in which he made incriminating statements [481].
At a criminal trial the judge properly exercised his discretion with respect
    to the scope of redirect examination of the victim. [481-482]
At a rape trial, the judge properly admitted, as fresh complaint evidence,
    testimony of a nurse with whom the victim had spoken one hour after
    the rape and after she had told other persons. [482]

INDICTMENTS found and returned in the Superior Court
Department on January 30, 1992.

A motion to suppress evidence was heard by *Patrick J.
King*, J., and the cases were tried before him.

*Michael A. Cioffi* for the defendant.

*David W. Cunis*, Assistant District Attorney, for the
Commonwealth.

SMITH, J. A jury returned guilty verdicts against the de-
fendant on two indictments charging him with rape and as-
sault by means of a dangerous weapon, to wit, a rock. Prior
to trial, the defendant filed a motion to suppress a statement
that he made to the police after his arrest. Following an evi-
dentiary hearing, the motion was denied and the defendant

claims error. The defendant also claims that the judge committed error at the trial in (1) allowing in evidence a portion of the victim's testimony on redirect examination and (2) allowing a nurse to testify as a fresh complaint witness.

1. *The denial of the defendant's suppression motion.* On appeal, the defendant claims that the statement that he made to the police should have been suppressed because the statement was made after he had invoked his Miranda rights to remain silent and to have an attorney present during any interrogation. See *Miranda* v. *Arizona*, 384 U.S. 436, 479 (1966). The defendant argues that *Miranda* was violated because his right to cut off questioning was not "scrupulously honored," *Michigan* v. *Mosley*, 423 U.S. 96, 104 (1975), and because the police interrogated him without the presence of a lawyer, after he had invoked his right to counsel. *Edwards* v. *Arizona*, 451 U.S. 477 (1981).

We summarize the facts found by the motion judge. During the early hours of October 27, 1991, the victim reported that she had been raped by the defendant. The defendant, who was seventeen years of age, was arrested and booked at approximately 2 P.M. on the same date. At his booking the defendant was advised of his Miranda rights by a Captain Carlucci. The defendant invoked his right to remain silent and his right to have counsel present. He was placed in a cell. Later that day, the defendant's father visited him at the police station and told him not to discuss the facts of the case until he had spoken with an attorney.

A detective, one Terrio, was assigned to investigate the victim's claim that the defendant had raped her. After interviewing the victim, Terrio went to the defendant's cell at about 6 P.M., some four hours after the defendant had been arrested. She introduced herself to the defendant and informed him that she had interviewed the victim concerning the victim's version of what had transpired earlier that day. Terrio told the defendant she knew he had advised the police earlier that he did not wish to discuss the facts of the case

with the police, but, if he changed his mind, she would be willing to speak with him.[1]

The defendant informed Terrio that he wanted to tell her his side of the story. Terrio then gave the defendant his Miranda rights. The defendant said that he understood his rights but that he still wanted to talk to her about what had occurred. Terrio urged the defendant to speak to his father before making a decision to talk to her. Terrio then brought the defendant into her office where a telephone call was placed to his father. The defendant's father again told the defendant not to speak to the police about the facts of the case until after he had spoken to his attorney. Nevertheless, after the conversation with his father, the defendant informed Terrio that he would like to talk to her about the case. At that point it was approximately 7 P.M. Terrio advised the defendant of his Miranda rights again and gave him a Miranda waiver form to read and sign. After the defendant had read the form, Terrio went over its contents with him to make sure that he understood his rights. The defendant decided to waive his Miranda rights, signed the form, and then gave a statement to Terrio in her office.[2]

In denying the defendant's motion, the judge ruled that Terrio's introductory remarks to the defendant at his cell did not constitute "interrogation." Rather, the judge ruled it was

---

[1] It is these remarks by Terrio that the defendant claims constituted interrogation.

[2] The defendant told Terrio that he met the victim at a party and offered to walk her home after her friends would not let her ride in their car. The victim told him that she was a virgin and was not going to have intercourse with him.

During the course of the walk, the defendant let the victim borrow his jacket because she was cold. When she returned the jacket to him, he noticed that $21 he had in his pocket was missing, and he accused the victim of stealing it. He became angry and "slapped her a little bit" and pushed her to the ground.

The defendant then told Terrio that he had intercourse with the victim but that it was consensual. He denied that he threatened her with a rock but admitted that when she ran away she said, "Please don't hurt me, please don't hurt me." When asked by Terrio why the victim would run away if the intercourse was consensual, the defendant replied, "Because she's afraid of me, that's why."

the defendant who voluntarily decided to speak to the police without the presence of counsel. The judge ruled that Terrio did nothing to coerce or trick the defendant into waiving his constitutional rights. The judge also found that the defendant was not under the influence of drugs or alcohol, appeared intelligent and rational, understood the nature of the charges against him, and was aware that anything he said to Terrio could be used against him.

"In reviewing a . . . judge's determination that a voluntary waiver was made, the judge's subsidiary findings will not be disturbed, if they are warranted by the evidence, and his resolution of conflicting testimony will be accepted." *Commonwealth* v. *Tavares*, 385 Mass. 140, 144-145, cert. denied, 457 U.S. 1137 (1982). "Our appellate function requires that we make our independent determination on the correctness of the judge's 'application of constitutional principles to the facts as found . . . .' " *Commonwealth* v. *Haas*, 373 Mass. 545, 550 (1977), quoting from *Brewer* v. *Williams*, 430 U. S. 387, 403 (1977).

The defendant, here, invoked two separate Miranda rights — the right to remain silent and the right to have counsel present during interrogation. When a defendant invokes both rights two different standards are applied to determine the admissibility of any subsequent statement made by that defendant. In *Michigan* v. *Mosley*, 423 U.S. at 104, the Court ruled that there is no per se rule barring the resumption of interrogation after the defendant has invoked his right to remain silent, and that interrogation may resume if the defendant's rights are "scrupulously honored." Because in *Mosley* questioning was resumed "only after the passage of a significant period of time and the provision of a fresh set of warnings" and the second interrogation was restricted "to a crime that had not been a subject of the earlier interrogation," the Court ruled that the defendant's right to cut off questioning was scrupulously honored. *Id.* at 106. Therefore, if a defendant invokes his right to remain silent, he may be interrogated provided that the police meet certain conditions.

However, a broader protection is given to a defendant who invokes his right to counsel.[3] In *Edwards* v. *Arizona*, 451 U.S. at 479, the defendant invoked his right to have counsel present during any interrogation. The following day police officers went to the county jail, and when he refused to speak with them, the defendant was told that "he had" to talk. The defendant then gave a statement. Holding that the statement must be suppressed, the Court ruled that when an accused has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-485. Also see *Commonwealth* v. *Perez*, 411 Mass. 249, 258 (1991). Because here, the defendant invoked his right to counsel, the critical question we must consider is whether Terrio's remarks constituted interrogation. If they did not, we then must decide if the defendant, himself, initiated further communication with the police before he was interrogated.

For the purposes of *Miranda*, "interrogation" means not only express questioning of a suspect but also its "functional equivalent." *Rhode Island* v. *Innis*, 446 U.S. 291, 301 (1980). *Commonwealth* v. *Rubio*, 27 Mass. App. Ct. 506, 511-512 (1989). The "functional equivalent" of interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island* v. *Innis, supra* at 301.[4] *Commonwealth* v. *Rubio, supra* at 512.

---

[3]See LaFave & Israel, Criminal Procedure § 6.9, at 538 (1984), where the authors observe that because of the strong language in *Edwards*, it would appear that *Mosley*'s "scrupulously honored" test applies only to those situations where the defendant has invoked his right to silence and then is interrogated.

Because we hold that the defendant was not the subject of interrogation before he gave a statement, we need not consider whether his right to cut off questioning was "scrupulously honored."

[4]In *Rhode Island* v. *Innis, supra* at 293-295, the defendant was arrested for armed robbery. The weapon used was a sawed-off shotgun. When the

"The 'functional equivalence' test does not turn on the subjective intent of the particular police officer but on an objective assessment as to whether the police statements and conduct would be perceived as an interrogation by a reasonable person in the same circumstances." *United States* v. *Taylor*, 985 F.2d 3, 7 (1st Cir.), cert. denied, 113 S. Ct. 2426 (1993).[5] *Commonwealth* v. *Rubio, supra* at 512 ("Interrogation is present 'if an objective observer (with the same knowledge of the suspect as the police officer) would . . . infer that the [officer's speech or conduct was] designed to elicit an incriminating response,' " quoting from White, Interrogation Without Questions: *Rhode Island* v. *Innis* and *United States* v. *Henry*, 78 Mich.L.Rev. 1209, 1231-1232 [1980]).

Terrio's remarks did not contain any express questions nor did her remarks imply a question. Contrast *Commonwealth* v. *Rubio, supra* at 513 (showing cocaine to defendant was confrontational and had the force of an implicit question: "Is this yours?" and, therefore, was the functional equivalent of interrogation). If Terrio's remarks simply "struck a responsive chord," such "subtle compulsion" does not amount to an interrogation unless it can be determined objectively that Terrio should have known that her remarks were "reasonably likely to elicit an incriminating response." *Rhode Island* v. *Innis*, 446 U.S. at 303. Terrio's statement was neither confrontational nor inquisitional; it was no more than it purported to be: an expression of her availability if he wanted to

---

defendant was arrested on the street, he was unarmed. The defendant invoked his right to confer with an attorney. While en route to the police station, two officers engaged in a conversation between themselves, in front of the defendant. One officer stated that there were "a lot of handicapped children running around in the area" because of a nearby school and "God forbid one of them might find a weapon with shells and they might hurt themselves." The defendant told the officers where he had hidden the weapon.

The Court held that the defendant was not subject to interrogation or its functional equivalent. *Id.* at 302.

[5]The subjective intent of the police has some relevance but "the mere fact that a police officer may be aware that there is a 'possibility' that a suspect may make an incriminating statement is insufficient to establish the functional equivalent of interrogation." *United States* v. *Taylor*, 985 F.2d at 8. See *Arizona* v. *Mauro*, 481 U.S. 520, 528-529 (1987).

talk. The defendant's response revealed and confirmed this understanding: he said he did want to talk. That statement is entirely neutral and not incriminating.[6] Once the defendant spoke in response to her remarks, Terrio immediately advised him of his Miranda rights including the rights to remain silent and to have an attorney present during any interrogation. He stated that he understood his rights but still wanted to talk about the matter. Terrio urged him to speak to his father and obtain his advice; he did so, and after the defendant had rejected his father's advice, Terrio again gave the defendant his Miranda rights and the defendant signed a waiver of those rights. We conclude in the circumstances that the defendant was not subject to any form of interrogation before he made his incriminating statement.

The defendant's statement that he wanted to tell his side of the story was made before he was interrogated. We hold that by making that statement, the defendant " 'initiated' further conversation in the ordinary dictionary sense of that word." *Oregon* v. *Bradshaw*, 462 U.S. 1039, 1045 (1983).[7]

---

[6]In *Rhode Island* v. *Innis*, 446 U.S. at 301 n.5, the Court defined "incriminating response" as including "any response — whether inculpatory or exculpatory — that the *prosecution* may seek to introduce at trial" (emphasis in original).

Here, the incriminating response is not the defendant's statement that he wanted to speak about the matter. Rather, it is the inculpatory statement (see note 2, *supra*) introduced at trial.

[7]In *Oregon* v. *Bradshaw*, 462 U.S. at 1041-1042, the defendant invoked his right to counsel. Later, he inquired of a police officer, "Well, what is going to happen to me now?" In the course of a discussion between the defendant and the police officer, the defendant made some incriminating statements.

The Court acknowledged that not every inquiry by either a defendant or by a police officer would be held to constitute an initiation of a conversation or dialogue. "There are some inquiries, such as a request for a drink of water or a request to use a telephone, that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation." *Id.* at 1045. It ruled, however, that "[a]lthough ambiguous, the respondent's question in this case as to what was going to happen to him evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the

Therefore, on these facts there was not a violation of the *Edwards* rule.

Our inquiry does not stop here. If a suspect invokes his right to counsel and then initiates further conversation with the police, "the burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *Oregon* v. *Bradshaw*, 462 U.S. at 1044. Here, the "subsequent events" included multiple giving of the Miranda rights to the defendant and a clear waiver of those rights. The evidence supports the motion judge's ruling that the defendant was not tricked or coerced into making a statement, and that the defendant, at all relevant times, was intelligent and rational. We are aware that the defendant was seventeen years old at the time of his arrest. For the purposes of *Miranda* he was not a juvenile and therefore the special scrutiny rules of *Commonwealth* v. *A Juvenile*, 389 Mass. 128, 134 (1983), do not apply. *Commonwealth* v. *Carey*, 407 Mass. 528, 537 (1990).[8] Here, we agree with the motion judge and conclude that the defendant's waiver was voluntary, knowing and intelligent.

2. *Other issues.* The other issues may be disposed of summarily.

There was no error by the judge in allowing the victim to explain on redirect examination why she suffered from a memory lapse in regard to the events concerning the incident. That memory lapse was first revealed during cross-examination. "The scope of redirect examination of a witness is

---

incidents of the custodial relationship." *Id.* at 1045-1046.

Here, the defendant's statement that he wanted to give his side of the story obviously related generally to the investigation.

[8]*Commonwealth* v. *A Juvenile, supra* at 131-134, held, among other things, that in the case of a juvenile who is at least fourteen years old at the time of the purported waiver, the Commonwealth must establish that, before the challenged statement was made, the juvenile was advised of his Miranda rights and was afforded the opportunity to consult with an interested adult who was informed of, and understood, those rights. Because the defendant in the instant case was seventeen at the time of the waiver, according to *Commonwealth* v. *Carey, supra*, he is an adult and the "interested adult" rule does not apply.

within the sound discretion of the trial judge . . . . A defendant who claims, on appeal, an abuse of discretion, assumes a heavy burden." *Commonwealth* v. *Maltais*, 387 Mass. 79, 92 (1982). Here, the defendant did not meet that burden.

The victim told a nurse about the incident one hour after the incident. Therefore, the complaint was reasonably prompt. See *Commonwealth* v. *Lavalley*, 410 Mass. 641, 642 (1991). We realize that the victim told other persons before informing the nurse, but a judge is not required to restrict fresh complaint testimony to those witnesses who heard the earliest complaint. There was no error in admitting in evidence the nurse's testimony.

*Judgments affirmed.*