## COMMONWEALTH *vs.* LAZELL COOK.

Middlesex. September 9, 1994. - December 20, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Constitutional Law*, Search and seizure, Probable cause, Admissions and confessions, Waiver of constitutional rights. *Search and Seizure*, Probable cause. *Probable Cause. Arrest. Waiver. Evidence*, Admissions and confessions, Relevancy and materiality. *Practice, Criminal*, Voluntariness of confession, Instructions to jury, Argument by prosecutor, Capital case. *Intoxication. Joint Enterprise. Felony-Murder Rule. Homicide. Robbery.*

Evidence at a hearing on a defendant's motion to suppress evidence did not establish that the defendant was placed under arrest after he voluntarily entered the police station and was requested to take a seat in the lobby, where there was no submission to authority or physical force following a show of authority nor would a reasonable person have felt he was not free to leave the police station. [197-200]

At a criminal trial, evidence at the hearing on a motion to suppress post-arrest statements he made to police officers supported the judge's finding that the defendant voluntarily waived his Miranda rights and that the defendant was not intoxicated when he made the statements at issue. [200-201]

At a murder trial the judge correctly concluded that the evidence was insufficient to suggest that the defendant withdrew from the joint venture proved so as to require a jury instruction on that issue. [201-202]

At a murder trial, error, if any, in a prosecutor's closing remark that, in context, attempted to suggest that the jury rely on common experience and common sense in reaching their verdict, was adequately addressed by the judge's instructions to the jury; certain other remarks of the prosecutor were properly based on the evidence or on a permissible inference. [202-204]

At the trial of two indictments for first degree murder and an indictment for armed robbery on a theory of joint venture felony-murder, the defendant's motion for a required finding of not guilty on so much of the robbery indictments as alleged he was armed should have been allowed where there was no evidence that the defendant knew that his co-defendant was armed, but the error was harmless where the jury on

ample evidence convicted the defendant of the lesser included offense of unarmed robbery. [204-205]

Sufficient evidence supported a jury's verdicts of guilty on two indictments for first degree murder on a theory of joint venture felony-murder with unarmed robbery as the underlying felony, where the jury were warranted in finding that the defendant participated in an unarmed robbery of a nature dangerous to the lives of the two victims, during the course of which the victims were murdered. [205-207]

At the trial of a defendant on a theory of joint venture felony-murder, where the identity of the person who actually stabbed the victims was not in issue, evidence of that person's convictions for the crime was properly excluded by the judge as irrelevant. [207]

No reason appeared on appeal of convictions on two indictments for first degree murder for this court to exercise its power under G. L. c. 278, § 33, to order a new trial or the entry of verdicts of a lesser degree of guilt. [208]

INDICTMENTS found and returned in the Superior Court Department on November 8, 1990.

Pretrial motions to suppress evidence were heard by *Walter E. Steele*, J., and *Wendie I. Gershengorn*, J., and the cases were tried before *Gershengorn*, J.

*Robert S. Sinsheimer* for the defendant.

*Patricia M. Darrigo*, Assistant District Attorney (*David E. Meier*, Assistant District Attorney, with her) for the Commonwealth.

LIACOS, C.J. The defendant appeals from his convictions on two indictments charging felony-murder in the first degree and ·one indictment charging unarmed robbery. He claims a variety of errors. We address only the claims of error adequately briefed, namely, that: (1) the arresting officers lacked probable cause to arrest and, hence, certain evidence obtained incident to the arrest should have been suppressed; (2) the trial judge provided inadequate jury instructions; (3) the prosecutor committed prejudicial error in his closing argument; (4) the Commonwealth submitted insufficient evidence to support a conviction based on a joint venture theory of felony-murder; and (5) the judge erred in not admitting in evidence the convictions of his former co-

defendants.[1] Finally, we have reviewed the entire record to determine whether the murder verdicts are "against the law or the weight of the evidence." G. L. c. 278, § 33E (1992 ed.). *Dickerson* v. *Attorney Gen.*, 396 Mass. 740, 741 (1986). We affirm the convictions.

We summarize the facts which the jury would have been warranted in finding on the evidence submitted at trial.[2] The victims in this case, Jesse McKie and Rigoberto Carrion, were killed when they were attacked by a group of men outside the Newtowne Court housing project in Cambridge in the early morning hours of January 25, 1990. McKie and Carrion, along with a friend, Tracy Williams, were walking together on Windsor Street at about 12:15 A.M. when they were approached by five or six black males, including the defendant. Someone in the group told McKie, "Give up the coat." The men then surrounded McKie and, although he agreed to surrender the leather jacket he was wearing, began to beat him severely as they pulled off his jacket. During the attack, Ventry Gordon, one of the attackers, produced a knife and stabbed McKie several times in the chest. McKie was left in a snowbank and died as a result of his stab wounds.

After leaving McKie lying in the snowbank, the group attacked Rigoberto Carrion. Carrion was also severely beaten by the group and was fatally stabbed in the chest by Ventry Gordon.[3] The group dispersed after the attack. Sean Lee,

---

[1]We decline to address some of the claims of error because, as briefed, the arguments do not rise to the level of adequate appellate argument. Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

As to those claims adequately briefed but without sufficient merit to require extensive discussion, see note 12, *infra.*

[2]We leave further factual details for presentation in the course of our analysis of particular issues.

[3]There was ample evidence that the defendant participated in the physical assault on McKie (including punching him while his jacket was being pulled off), that the defendant's clothing had blood smears and bloodstains, and that he departed the scene in a van with the stabber, Ventry Gordon. Several of the defendant's pretrial statements tended to corroborate this evidence.

As to the victim Carrion the evidence, while not overwhelming, was adequate to show the defendant's participation in that assault and homicide.

who now was wearing McKie's jacket, and Ricardo Parks were apprehended near the scene of the crime and were identified by Tracy Williams as two members of the group that attacked McKie and Carrion. Ventry Gordon and Ronald Settles were identified later by Williams when the van in which they were traveling was stopped by police.[4]

1. *Motion to suppress.* Prior to trial, the defendant filed a motion to suppress physical evidence seized during a pre-arrest pat down of his person as well as physical evidence seized and statements made by him following his arrest.[5] The judge deemed the pat down to be illegal, ordered suppression of the knife, and denied the motion as to the remainder of

[4]The defendant was identified by Williams shortly after he saw the defendant at the Cambridge police station.

One other individual, Kevin Rollins, was later identified as being among the group of men who approached McKie. However, he was not indicted, because it was later determined that Rollins did not participate in the attacks.

[5]The defendant was indicted in February, 1990. He filed a motion to suppress in May, 1990. This was heard by a judge in the Superior Court who was not the trial judge. The judge allowed the motion only as to the knife seized during the pat down.

In October, 1990, the prosecutor believed that there was some inaccuracy in the testimony of one of the witnesses before the first grand jury. The Commonwealth dismissed the indictments and reindicted the defendant in November, 1990. Thereafter, and after the defendant's motion to suppress was decided, the same judge, over the Commonwealth's objection, allowed Gordon to plead guilty to so much of the indictments as charged murder in the second degree. The Commonwealth's request for relief pursuant to G. L. c. 211, § 3, was allowed, and we vacated the order allowing the plea on July 1, 1991. *Commonwealth* v. *Gordon*, 410 Mass. 498, 504 (1991). We did not, in the *Gordon* case, reach any of the issues addressed here.

When the case was remanded to the Superior Court, it was assigned to another judge. The defendant renewed his motion to suppress evidence, and it was denied. During the course of the trial of codefendants Cook, Gordon, Settles, Parks, and Lee, the defendant's case was severed from that of the others. The defendant was then tried separately and his convictions at that trial are the subject of this appeal.

On appeal then, we are presented with the findings of two judges on the defendant's motions to suppress. We rely on the facts found by the trial judge in the renewed motion, which were in all relevant aspects nearly identical to those found by the first judge.

the evidence.[6] The defendant claims error in the second judge's denial of the motion to suppress his postarrest statements and physical evidence[7] seized after his arrest. He argues that this evidence, which was inculpatory, should have been suppressed because it was obtained following an illegal arrest not based on probable cause. We disagree.

We recite the relevant facts found by the second judge in denying the motion to suppress. Following the stabbings, Lee and Parks were stopped by police near Newtowne Court. Tracy Williams was brought to the location and identified the two men as members of the group that he had seen attack McKie and Carrion. Lee and Parks were arrested and brought to the Cambridge police station for booking. Shortly thereafter, Williams was driven to the Cambridge police station by Detective Stephen Edwards. As the two men got out of the cruiser, Williams saw the defendant in the garage area of the station. He asked Edwards, "Who's that?" Detective Edwards approached the defendant and asked him what he was doing in that area (normally restricted to police personnel). The defendant stated that he was there to bail out his friend, "Ricardo." Edwards directed the defendant to the front door of the station and he and Williams followed the defendant inside.

Williams stated to Edwards that the defendant looked familiar. Once inside the main lobby, the defendant approached the front desk and told the commanding officer on duty, Lieutenant Degou, that he was there to bail out Ricardo Parks, from whom he had received a telephone call. Inquiring into Parks's and Lee's status, Lieutenant Degou learned that they were not through with the booking process and had not yet been allowed telephone calls.[8] The defendant

---

[6]This knife was not the murder weapon.

[7]This physical evidence includes: results of tests for blood on the defendant's person, results of forensic tests of the defendant's possessions at the time of arrest, and a gold watch and United States currency seized from the defendant's person at the time of arrest.

[8]The defendant's brief states that he was told by Lieutenant Degou to have a seat prior to being approached by Edwards. This fact was not found

was approached by Detective Edwards who asked him for identification. The defendant had none. Edwards then asked the defendant where he had come from and received no answer. When asked how he had arrived at the station the defendant stated that he had come with his friends in a brown van. Detective Edwards then proceeded to pat down the defendant's clothing and as a result seized a knife from the defendant's person. Edwards then asked the defendant to have a seat in the lobby.

Detective Edwards was suspicious of the defendant because of his statement that he had received a telephone call from Parks. He asked Williams if he recognized the defendant in relation to the stabbings and Williams stated that he "looked like one of them." Without restraining the defendant, Edwards then left the station to search for the van.

Because Edwards did not see a brown van parked outside the police station, he got into his unmarked cruiser and went in search of the van. He soon encountered it going the wrong way on a one-way street not far from the station. At this time a radio communication was broadcast from Officer Ronald Halliday stating that a brown van was observed in the area of Newtowne Court at the time of the stabbings. Detective Edwards stopped the van. After Williams was brought to the scene and identified Settles and Gordon as members of the group that attacked the victims, Edwards arrested them. Detective Edwards returned to the station and then placed the defendant under arrest.

a. *Time of arrest.* The defendant does not argue that the police lacked probable cause at the time he was placed under arrest by Detective Edwards following the arrests of Settles and Gordon. Rather, he argues that he was arrested when he first entered the police station and was told to sit down by

---

by the judge who heard the renewed motion to suppress. However, it was found when the motion was originally heard by the first judge and is supported in the record. Because the defendant points to it as relevant to his argument on this issue, we assume for purposes of our discussion that it occurred. As will be seen, this fact does not play a decisive part in our conclusion on this issue.

Lieutenant Degou, or, at the very latest, when Detective Edwards performed a pat down of the defendant's person and told him to sit down in the lobby. At neither of these times, argues the defendant, did the police have sufficient probable cause to arrest him. We conclude, as did both motion judges, that the defendant was not under arrest until Detective Edwards returned to the station after apprehending Gordon and Settles and formally placed the defendant under arrest.

In arguing that he was under "arrest" prior to his being formally placed under arrest, the defendant points to the Commonwealth's acknowledgment in its brief that it was Lieutenant Degou's and Detective Edwards's subjective intent not to let the defendant leave the station had he attempted to do so from the time he told Degou he was there to bail out Parks and Lee. The defendant also claims that, in the circumstances, a reasonable person would not have felt free to leave the station and thus the defendant was, under an objective standard, arrested.

It is well established that the undisclosed intentions of law enforcement officers, in and of themselves, are not controlling in determining whether an individual has been arrested. *Florida* v. *Bostick,* 501 U.S. 429, 436 (1991). *Commonwealth* v. *Sanderson,* 398 Mass. 761, 766 n.9 (1986). *Commonwealth* v. *Stawarz,* 32 Mass. App. Ct. 211, 213 (1992). The intentions of the officers are relevant as only one factor in considering whether, in light of all the surrounding circumstances, an arrest has occurred. *Commonwealth* v. *Sanderson, supra* at 766 & n.9. *Commonwealth* v. *Stawarz, supra* at 213 & n.4. Before an individual can be said to be "arrested," there must be (1) "an actual or constructive seizure or detention of the person, [2] performed with the intention to effect an arrest and [3] so understood by the person detained." *Massachusetts Gen. Hosp.* v. *Revere,* 385 Mass. 772, 778 (1982), rev'd on other grounds, 463 U.S. 239 (1983), quoting *Hicks* v. *United States,* 382 F.2d 158, 161 (D.C. Cir. 1967). The United States Supreme Court has recently held that, before a seizure occurs under the Fourth Amendment to the United States Constitution, there must

either be physical force applied against the suspect or an assertion of authority by a law enforcement officer and submission by the suspect to that assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). In our determination of what constitutes a "seizure" under art. 14 of the Massachusetts Declaration of Rights, we have followed the test previously set forth by the United States Supreme Court: Whether, in view of all the surrounding circumstances, a reasonable person would have believed that he was not free to leave. *Commonwealth* v. *Laureano*, 411 Mass. 708, 710 (1992). *Commonwealth* v. *Borges*, 395 Mass. 788, 791 (1985), quoting *United States* v. *Mendenhall*, 446 U.S. 544, 554 (1980). See *Commonwealth* v. *Willis*, 415 Mass. 814, 817 n.4 (1993).

We conclude that, under either the Federal or the Massachusetts standards outlined above, the defendant was not seized, and therefore was not arrested, until Detective Edwards placed him under arrest following the arrest of Gordon and Settles. Until that time there was no submission to authority or physical force following a show of authority nor would a reasonable person have felt he was not free to leave the police station.

The defendant entered the police station voluntarily and not at the request of any law enforcement officer. For the duration of time that the defendant was at the station, with the exception of the pat down conducted by Edwards, he was not restrained in any way. He moved freely about the station, and apparently felt unfettered enough to use a public telephone at one point.

Although Lieutenant Degou and Detective Edwards were suspicious of the defendant and would not have allowed him to leave had he attempted to do so, their intent was never communicated to the defendant. See *Florida* v. *Bostick*, *supra* at 436; *Commonwealth* v. *Ballou*, 350 Mass. 751, 756 (1966), cert. denied, 385 U.S. 1031 (1967). Lieutenant Degou's request that the defendant have a seat in the lobby cannot be described as a "show of authority" which, if the defendant can be said to have submitted to it, would consti-

tute a "seizure" for Fourth Amendment purposes. *California v. Hodari D.*, *supra*. Detective Edwards's action in asking the defendant about his identity and where he had come from did not amount to a seizure. "A [Fourth Amendment] seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, *supra* at 434. *Commonwealth v. Fraser*, 410 Mass. 541, 543 (1991). This is particularly evident in the instant case where the defendant entered the police station of his own free will in search of his friends, Parks and Lee, and approached the officer on duty asking whether he could bail them out.

The defendant argues that, at the latest, he was under arrest when Edwards conducted a pat down of the defendant's clothing for weapons. We note that the only relevant evidence seized at that time, the knife, was suppressed. The other evidence obtained and admitted in evidence came after the defendant was placed formally under arrest. At that point there was adequate probable cause to justify the warrantless arrest.

b. *Postarrest statements.* The defendant also argues that the evidence acquired as a result of the interrogation following his arrest must be suppressed because he did not knowingly and voluntarily waive his Miranda rights prior to interrogation by the police. He further claims that his statements were made involuntarily because he was intoxicated at the time of interrogation. The defendant's arguments are not persuasive.

We give substantial deference to the judge's findings of fact in reviewing the denial of a motion to suppress. See *Commonwealth v. Bookman*, 386 Mass. 657, 661 n.6 (1982); *Commonwealth v. Correia*, 381 Mass. 65, 76 (1980). "In reviewing a . . . judge's determination that a voluntary waiver was made, the judge's subsidiary findings will not be disturbed, if they are warranted by the evidence, and his resolution of conflicting testimony will be accepted." *Commonwealth v. D'Entremont*, 36 Mass. App. Ct. 474, 477

(1994), quoting *Commonwealth* v. *Tavares*, 385 Mass. 140, 144-145, cert. denied, 457 U.S. 1137 (1982).

Here, the evidence supports the judge's findings that the defendant was read his Miranda rights at each interrogation the morning following the murders and either signed a waiver card or indicated that he understood them and willingly spoke. This was enough to constitute a waiver of Miranda rights. *Commonwealth* v. *Williams*, 378 Mass. 217, 225 (1979). With regard to the claim of intoxication, Officers Paul Klerowski and Gary Edwards, as well as Lieutenant Degou, State Trooper David Otte, and an assistant district attorney, each of whom came in contact with the defendant shortly after his arrest, testified that the defendant, although he at times appeared tired, did not smell of alcohol, had no trouble walking, nor was his speech slurred. We conclude that this evidence at the motion hearing amply supports the trial judge's findings that the defendant was not intoxicated when he made the statements at issue.

2. *Jury instructions.* The defendant claims that the judge erred in failing to instruct the jury on the concept of withdrawal from a joint venture. He argues that there was sufficient evidence allowing for an inference that he withdrew from the joint venture to rob McKie so as to require an instruction on that issue. The judge did not err in refusing the defendant's request for the instruction.

Before a judge is required to give a requested instruction, there must be some basis in the evidence, viewed in the light most favorable to the proponent, supporting the requested instruction. See *Commonwealth* v. *Green*, 302 Mass. 547, 555 (1939); *Commonwealth* v. *Sowell*, 22 Mass. App. Ct. 959, 962 (1986); *Commonwealth* v. *Joyce*, 18 Mass. App. Ct. 417, 428-429 (1984); *Commonwealth* v. *Farnkoff*, 16 Mass. App. Ct. 433, 447 (1983). "A judge need not charge on an hypothesis not supported by evidence." *Commonwealth* v. *O'Dell*, 15 Mass. App. Ct. 257, 261 (1983). See *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980).

The judge correctly concluded that the evidence was insufficient to suggest that the defendant withdrew from the joint

venture. The sole evidence in support of the defendant's position was his own statements to the police, testified to by the officer who had questioned him following the stabbings, that after he had "kick[ed] and punch[ed]" Jessie McKie he left the scene of the fight before Ventry Gordon and returned to the van. The defendant stated that when Gordon arrived at the van he declared that he had stabbed two people. There is some inconsistency in the defendant's statements in that he also admitted to participating in the attack on Carrion, which, the evidence showed, occurred after the attack on McKie. Even if we credit the defendant's claim that he returned to the van prior to Gordon, this alone does not lead to an inference that he withdrew from the joint venture.

In order to support a theory of withdrawal or abandonment of a joint venture, "there must be at least an appreciable interval between the alleged termination and [the commission of the crime], a detachment from the enterprise before the [crime] has become so probable that it cannot reasonably be stayed, and such notice or definite act of detachment that other principals in the attempted crime have opportunity also to abandon it." *Commonwealth* v. *Fickett*, 403 Mass. 194, 201 (1988), quoting *Commonwealth* v. *Green*, *supra.*

In the case at bar, there was no evidence that the defendant made an announcement to his coventurers that he intended to withdraw. Nor was there evidence of an appreciable time period between an announcement and the crimes of robbery and murder. See *Commonwealth* v. *Pope*, 406 Mass. 581, 584-585 (1990). "There is no requirement that a judge charge on factual situations which are speculative or conjectural and which are unsupported by evidence." *Commonwealth* v. *Santo*, 375 Mass. 299, 307 (1978). *Commonwealth* v. *Caine*, 366 Mass. 366, 374-375 (1974). The case relied on by the defendant, *Commonwealth* v. *Fickett*, *supra*, does not support the defendant's argument as in that case there was evidence on each element of timely withdrawal.

3. *The prosecutor's closing argument.* The defendant claims that the prosecutor erred in his closing argument, by

making a comment which the defendant contends "denigrated the concept of reasonable doubt," by refering to photographs of the victims' bodies, and by suggesting that Carrion was killed because he was a witness to the McKie stabbing.

In the course of his closing argument, the prosecutor stated that the jury should "not be intimidated by the phrase 'beyond a reasonable doubt.'" The defendant made a timely objection. We conclude that the comment was not improper.

The situation here is in some ways similar to the case of *Commonwealth* v. *Atkins*, 386 Mass. 593 (1982). In *Atkins*, the prosecutor commented in his closing argument on his burden of proving the defendant's guilt "beyond a reasonable doubt." He defined the requirement of moral certainty as a "settled conviction in your minds" and as knowing "in your heart and in your mind" that a defendant is guilty. *Id.* at 601. In *Atkins* we concluded there was no error. For similar reasons, we also discern no error in the instant case.

When viewed in connection with the other statements made by the prosecutor surrounding the language regarding reasonable doubt, it is apparent that the prosecutor was attempting in his argument merely to suggest that the jury rely on common experience and common sense in reaching their verdicts.[9]

Even if we were to assume that the prosecutor's comment was improper, it was adequately cured by the judge's instructions to the jury. The judge instructed the jury prior to the start of the closing arguments that the content of the arguments was not to be considered evidence. In addition, at the

---

[9] The relevant portion of the prosecutor's argument is as follows: "When you come into this jury room and you sit in that jury box, you don't leave behind your daily experiences, your common experiences, your common sense, because you're not fourteen or sixteen different jurors, you're one jury. You bring together your collective experiences from all of your professions, from all of your different homes. If someone tells you something, you ask yourselves, 'Does it make sense? Does it ring true?' Do not be led astray. Do not be confused. Do not be intimidated by the phrase 'beyond a reasonable doubt.' Listen to what your Honor . . . tells you about that phrase."

beginning of her charge the judge informed the jury of their duty to accept the law as she instructed them and apply it to the facts they found. Finally, the judge gave a full and correct definition of reasonable doubt in her charge to the jury which "amply resolved any confusion [the improper comment] might have caused." *Id.* at 602. *United States* v. *Coady*, 809 F.2d 119 (1st Cir. 1987). "That was the last word the jury heard on the subject and cured any misrepresentation the prosecutor's misstatements might have caused." *Commonwealth* v. *Snow*, 30 Mass. App. 443, 447 (1991).

The prosecutor's brief reference to the photographs of the victims' bodies in his closing argument was not improper as it was based on the evidence. Cf. *Commonwealth* v. *Clary*, 388 Mass. 583, 590 (1983). His argument that Carrion was killed because he was a witness also was proper as the evidence presented at trial allowed for that inference.

4. *Sufficiency of the evidence.* The defendant argues that there was insufficient evidence to convict him of the felony-murders of McKie and Carrion. Thus, he claims that his motions for required findings of not guilty should have been allowed. "In reviewing the denial of a motion for a [required finding] in a criminal case, we determine whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged." *Commonwealth* v. *Campbell*, 378 Mass. 680, 686 (1979). See *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-677 (1979). In reviewing the evidence presented by the Commonwealth under this standard, we conclude that the judge erred in denying the defendant's motion as it pertained to the armed robbery indictment. However, as the jury convicted the defendant not of armed robbery but of the lesser included offense of unarmed robbery, the denial of the motion was harmless error as to the robbery conviction. *Commonwealth* v. *Lang*, 24 Mass. App.

Ct. 253, 258-259 (1986). The remainder of the motion was properly denied.

The defendant was tried on two indictments charging murder and one charging armed robbery. At the close of the Commonwealth's case, the prosecution had introduced no evidence adequate to show that the defendant knew that Ventry Gordon was armed. Such a showing was necessary to demonstrate an essential element of the crime of armed robbery on a joint venture theory. *Commonwealth* v. *Fickett*, 403 Mass. 194, 197 (1988), and cases cited. Accordingly, the Commonwealth failed to meet its burden on this element of guilt so as to survive a motion for a required finding as to robbery while armed.

In order to prove a defendant guilty of first degree felony-murder on a joint venture theory, the Commonwealth must present evidence that the defendant was a joint venturer with another, that the defendant intentionally assisted the principal in the commission or attempted commission of the felony, shared his mental state as to the commission or attempted commission of the felony and, that a homicide occurred in the commission or attempted commission of the felony and "flowed naturally and probably from the carrying out of the [joint enterprise]." *Commonwealth* v. *Hamilton*, 411 Mass. 313, 323-327 (1991).

Although so much of the indictment as charged armed robbery should have been dismissed, there was ample evidence that the defendant participated in an unarmed robbery with conscious disregard for human life which resulted in the death of the two victims. Because the felony of unarmed robbery is not inherently dangerous to human life, i.e., it can be committed without a foreseeable risk to human life, the Commonwealth must show that the defendant committed the felony with conscious disregard for human life before it may be used as a basis for a felony-murder conviction. *Commonwealth* v. *Moran*, 387 Mass. 644, 651 (1982). See *Commonwealth* v. *Matchett*, 386 Mass. 492 (1982). See also *Commonwealth* v. *Claudio*, 418 Mass. 103 (1994). In contrast, felony-murder based on a felony which is inherently danger-

ous to human life does not require a showing of conscious disregard for human life because the risk is implicit in the intent required for the felony, e.g., armed robbery. See *Commonwealth* v. *Matchett, supra* at 507.

The evidence at trial was sufficient to support the defendant's convictions. There is no question that a robbery occurred because force was used and Sean Lee was arrested wearing Jessie McKie's jacket. G. L. c. 265, § 19 (*b*) (1992 ed.). Nor was there any question that the two murders occurred during or immediately following the robbery. The real question, then, was the extent of the defendant's involvement in the robbery and whether the nature of the attack made it dangerous to human life.

The defendant was placed at the scene of the murders by several eyewitnesses. In addition, there was ample circumstantial evidence allowing for an inference that the defendant was at the scene and participated in the attacks. The defendant's own statements also implicated him in the crime.

Tracy Williams, McKie, and Carrion's companion, was standing about fifteen feet from the group of five attackers as they beat McKie. Williams identified the defendant, after seeing him at the Cambridge police station, as one of the members of that group. He testified that the entire group of men stuck together when they surrounded and began beating McKie.[10]

A resident of Newtowne Court, Michael Sullivan, witnessed the attacks on both victims from the living room window of his apartment. He testified that, although he could not see the faces of the attackers well enough to identify them, he saw the entire group attack McKie while pulling off his jacket and then attack Carrion. He also testified that one member of the group wore a jacket with lettering on the back, lettering which he thought read "Reebok" but could have said something else. He only remembered the letter "E" clearly. Evidence was introduced at trial that the defendant

---

[10]Williams was also able to pick out the defendant's photograph from a photographic array.

owned a jacket with the name "Georgetown" printed on the
back and that he was probably wearing it that night.[11] The
jacket was tested for blood stains and was determined to
have traces of blood on its sleeves. Also, the blood stains
found on the defendant's sweatshirt following his arrest were
consistent with him having worn a jacket during the attack.
More blood was detected on the defendant's hands and fore-
arms, on the cuffs and front of his shirt, and on his boots.
The stains on his boots were consistent with his having
kicked a bloody surface and were also consistent with the ap-
plication of blunt force trauma on the victims.

Earl Taylor, a bystander who knew the defendant and was
about ten feet from the fight, saw the defendant and the
other members of the group attack McKie and Carrion to-
gether. Finally, the defendant himself admitted to participat-
ing in the fight and beating the two victims.

Based on this evidence, the jury were warranted in finding
that the defendant had participated in an unarmed robbery
of McKie, vicious in the way it was carried out and, because
of its nature, dangerous to the lives of the victims, during the
course of which McKie and Carrion were murdered. *Com-
monwealth* v. *Nichypor, post* 209 (1994).

5. *Conviction of Ventry Gordon.* The defendant argues
that the judge erred in not permitting the introduction of
Ventry Gordon's murder convictions in evidence. The Com-
monwealth did not accuse the defendant of stabbing the vic-
tims but rather charged him as a joint venturer. The identity
of the individual who committed the actual stabbing of Mc-
Kie and Carrion was not disputed and was not at issue. The
judge apparently decided that the evidence of the convictions
was not relevant. This was within the sound discretion of the
judge. There was no error.[12]

---

[11] The jacket was found in the brown van in which Gordon and Settles
were riding when they were arrested.

[12] The defendant's remaining claims of error do not require extensive dis-
cussion. The first of these is that the Commonwealth's dismissal of his in-
dictment followed by his reindictment "constituted an illegal attempt to
shore up the government's case." There was no showing of prosecutorial

6. *Review under G. L. c. 278, § 33E.* We have considered the entire case on both the law and the evidence as required by G. L. c. 278, § 33E. We conclude that the verdicts were neither against the law nor the evidence and that the interests of justice do not require a new trial nor the entry of a verdict of a lesser degree of guilt.

*Judgments affirmed.*

---

misconduct nor is there any evidence that the intregrity of the grand jury was impaired in any way. See *Commonwealth* v. *Mayfield*, 398 Mass. 615, 619-622 (1986); *Commonwealth* v. *Nadworny*, 396 Mass. 342, 372, cert. denied, 477 U.S. 904 (1985). Absent such a showing, the argument fails for lack of merit.

The defendant also contends that the prosecutor made a claim in his opening statement regarding the defendant's motive for attacking Carrion and that the prosecutor then failed to introduce any evidence of that motive at trial. This claim is also without merit. The prosecutor introduced sufficient evidence of the defendant's motive for attacking Carrion consistent with his opening statement, namely, an inference of murder of an eyewitness to the murder of McKie.

The defendant further claims that he was prejudiced by the racial composition of the jury venire. However, a motion to this effect was not brought at the proper time, i.e., before the examination of the prospective jurors, and so the issue is not properly before us. Mass. R. Crim. P. 20 (a), 378 Mass. 890 (1979). *Commonwealth* v. *Ramos*, 406 Mass. 397, 406 (1990). Furthermore, a bald assertion, like the defendant's, that the jury pool contained no black members is an insufficient basis for the granting of a motion to strike the jury. *Id.*

The defendant also claims that he was prejudiced by the admission of evidence concerning behavior by a "group," of which he was allegedly a part, and by the judge's denial of his request that he be permitted to introduce evidence of the immunization of a prosecution witness who did not testify at trial. These two arguments were inadequately briefed, and thus we need not address them. See note 1, *supra.* See also Mass. R. A. P. 16 (a) (4).